UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

SEAN C. HILL,

                    Plaintiff,

    v.

UNITED STATES OF AMERICA and
JOHN H. TRUSKA, M.D.,

                  Defendants.

Case No. 1:11-cv-00413-BLW

**MEMORANDUM DECISION AND
ORDER**

## INTRODUCTION

Before The Court is the Plaintiff's Motion for Partial Summary Judgment on
Negligence and Proximate Cause filed in their medical malpractice action against the
United States. (Dkt. 32).  Having reviewed the record and the briefing, the Court
determines that oral argument is not necessary.  For the reasons set forth below, the Court
will grant the motion.

## BACKGROUND

Plaintiff Sean Hill visited the Terry Reilly Health Services Clinic in Caldwell on
two separate occasions; both times with the primary complaint of severe "back pain."
*Kluksdal Aff.* ¶¶1, 13, Dkt. 36-1.  During the first visit on September 29, 2009, Hill was
treated by physician's assistant Janine Franco, who believed Hill to be a drug-seeking

patient. *Id.* at 1-2. Franco gave Hill Flexeril and Ibuprofen but ran no further tests to determine if there was a reason for the pain.   *Id.* at 2.

Hill then returned to the clinic on November 23, 2009, and was seen by another physician's assistant, Kyle George.  *Id.* at 13.  Hill informed George that he had taken Ibuprofen since his previous visit, and although it had helped with the pain, he was still in discomfort. *Hill Dep.* 39:4-18, Dkt. 36-2. During the visit, Hill stated that his back pain was "messing with [his] breathing," and that he was nauseous. *Kluksdal Aff.* ¶ 13, Dkt. 36-1. Hill also told George that he was worried about tuberculosis. *Id.*

Based on Hill's symptoms, George ordered several tests including an EKG, a urine profile, a tuberculosis test, and a chest x-ray.  *Id.* ¶ 15.  The urine analysis showed that Hill did not take any drugs prior to his visit, and that his kidneys and liver were functioning normally.  *George Dep.*  85:8-86:10, Dkt. 36-3.  Hill also tested negative for tuberculosis.  *Kluksdal Aff.* ¶ 22, Dkt. 36-1.

As ordered by George, Hill went to  the clinic's Nampa location on November 24, 2009 and had x-rays taken of his lungs and spine. *Hill Dep.* 40:21-22, Dkt. 36-2. Dr. John H. Truska, a radiologist, evaluated the x-rays.   *Kluksdal Aff.* ¶ 21, Dkt. 36-1.  He prepared an evaluation stating that Hill had a loss of intervertebral disc space, which suggested developmental blocked vertebrae.  *Id.*  Dr. Truska recommended that "if clinically indicated," an MRI should be used for further evaluation.  *Id.*

George left for a family vacation on November 25, 2009, and did not return to the clinic's Caldwell location until December 8, 2009.  *George Dep.*  99:8-100:18, Dkt. 36-3. During this time, the Caldwell clinic received the results of the x-rays.  *Id.* The

**MEMORANDUM DECISION AND ORDER - 2**

Caldwell clinic, however, did not have a system in place to ensure that patient test results would be reviewed while the ordering physician was away from the office. *Id.* 97:8-98:22. George therefore had not asked anyone on the medical staff to review his files while he was away from the office. *Id.* 100:24-101:4.  As a result, Hill's x-rays were not reviewed by anyone in the clinic until December 8, 2009. *Id.*

While George was away from the Caldwell clinic, Hill's pain worsened. *Hill Dep.* 49:1-51:3, Dkt. 36-2.  Hill tried on several occasions to contact a physician at the clinic to receive the results of his tests.  *Id.* 49:1-53:3.  On each occasion Hill was told that a physician would have to get back to him with the information. *Id.*

On November 7, 2009, Hill woke up and was unable to move his legs, and EMTs took him to the hospital. *Id.* 51:14-52:17.  An MRI revealed an epidural abscess in Hill's spine.  *George Dep.* 111:20-22, Dkt. 36-3.  Hill underwent emergency surgery, but still lost mobility in his lower extremities. *Id.*

## LEGAL STANDARD

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims...." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for

summary judgment; the requirement is that there be no genuine issue of material fact."
*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir.1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir.1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his favor. *Id.* at 256–57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324.

## ARGUMENT

The United States is liable to Hill for any negligent medical treatment that occurred as a result of actions or omissions by the clinic and its employees.  George was

an employee of Terry Reilly clinic at the time he provided medical services to Hill. A medical center may be found vicariously liable for the negligence of personnel assigned to perform medical services. *See Jones v. HealthSouth Treasure Valley Hosp.*, 206 P.3d 437, 480 (Idaho 2009).  The remedy for negligence is exclusively against the United States when the actions are committed by "entities deemed Public Health Service employees."  42 U.S.C. § 233 (g).  The Terry Reilly clinic is deemed an employee of the Public Health for the relevant timeframe of the case.  Thus, the United States is solely liable for any negligent medical treatment of Hill.

Hill asserts that summary judgment on negligence and proximate cause is appropriate in this case because there are no genuine issues of material fact regarding (1) the appropriate standard of care recognized by the medical community; (2) the breach of that standard of care; and (3) causation of the spinal cord injury. The United States has admitted that it has "no defense" to Hill's motion.  *U.S. Resp. Br.* ¶ 1, Dkt. 38.

### 1.  Negligence

Under Idaho Law, a plaintiff in a medical malpractice case must show that four factors are present to prove negligence: (1) a duty of care; (2) a breach of the duty; (3) proximate cause; and (4) actual damage. *Cramer v. Slater*, 204 P.3d 508, 515 (Idaho 2009).

In order to establish the duty of care required in a medical malpractice case, the Idaho Legislature has imposed the requirement that a plaintiff  "must… affirmatively prove by direct expert testimony and by a preponderance of all the competent evidence" that the defendant "negligently failed to meet the applicable standard of health care

practice of the community in which such care allegedly was or should have been provided, as such standard existed at the time and place of the alleged negligence...." I.C. § 6-1012.  The Idaho Supreme Court has interpreted this statute to require a plaintiff to prove, through direct expert testimony, that a health care provider negligently failed to meet the community standard of health care at the time the care was given.  *Dulaney v. St. Alphonsus Medical Center*, 45 P.3d 816, 820 (Idaho 2007).

Additionally, Idaho Code § 6–1013 sets forth the means through which a party must prove the essential elements of a medical malpractice claim.  For expert testimony to be admissible, the plaintiff must establish four factors: (1) that the expert witness is testifying based on his opinion; (2) that the opinion can be testified to with reasonable medical certainty; (3) that the expert witness possesses professional knowledge and expertise; and (4) that the expert has actual knowledge of the applicable community standard where the negligent medical treatment occurred.  *Id.*  Expert testimony must be used by the plaintiff to show that there is both a recognized community duty and that the defendant's actions were in breach of that duty.  *Dulaney*, 45 P.3d at 820.

Based on the expert opinion offered by Hill, George breached the community standard of care when he left the clinic for ten days and did not arrange for anyone to review his patient's test results.  The United States submits no expert testimony disputing this opinion.  In fact, Dr. Stuart Black, George's supervising physician, agreed that the community standard of care required a Caldwell clinic physician to designate someone to review patients' labs and tests if gone for more than a few days. *Id.*  Dr. Black also stated

that this was the policy for all of the Terry Reilly clinics in the greater Boise area, and should have been known by both physicians and physician assistants. *Id.* 26:11-18.

A primary care physician from Boise, Dr. Wajeeh Nasser, also stated that the standard of care required medical personnel to designate someone to review medical test results if gone for more than a few days. *Nasser Aff.* ¶ 17, Dkt 36.  Dr. Nasser signed an affidavit stating he "believe[s] to a reasonable degree of medical certainty that it was a breach of the standard of care for George to leave the Caldwell clinic…and fail to have anyone designated" to review test results.  *Id.*

Hill's experts show that the standard of care requires a physician to have someone review medical test results if gone for more than a few days.  George left the clinic on November 25, 2009, and returned on December 8, 2009.  During this time, no one at the clinic arranged to have another medical employee review George's medical files.  The Court therefore finds that the clinic breached the standard of care.

### 2.  Proximate Cause

To succeed on  a medical malpractice claim, a plaintiff must also show that the provider's breach of the standard of care proximately caused the plaintiff's injuries. *Pearson v. Parsons*, 757 P.2d 197, 202 (1988).  To demonstrate proximate cause, a medical malpractice plaintiff must establish that the health care provider's negligence was both the actual cause and the legal cause of his injury. *Coombs v. Curnow*, 219 P.3d 453, 464 (Idaho 2009).  "Actual cause is a factual question focusing on the antecedent factors producing a particular consequence" while legal cause exists "when it is reasonably foreseeable that such harm would flow from the negligent conduct."  *Id.*

(internal citations and quotation marks omitted). An injury may have more than one actual cause. In such a case, a defendant may be liable if his or her negligence was a "substantial factor" in bringing about the harm. *Id.*.

Unlike elements of duty and breach of duty, no expert testimony is required to prove causation in medical malpractice cases. *Coombs v. Curnow*, 219 P.3d 453, 464 (Idaho 2009).  Instead, like any other negligence case, proximate cause may be proven by direct evidence or by showing a "chain of circumstances from which the ultimate fact required to be established is reasonably and naturally inferable." *Id.*   "The question of proximate cause is one of fact and almost always for the jury." *Id.* (citation omitted).

In this case, however, the United States admits that the delay in diagnosis "was a proximate cause of a spinal cord injury for Sean Hill." *Klukdal Aff.* ¶ 4, Dkt. 36-5.  In its response brief, it also concedes it "has no defense to the motion." *Def's Resp.* at 1, Dkt. 38. This admission, as well as the United States' failure to produce any evidence creating a disputed issue of fact, establishes that the delay in diagnosing the abscess proximately caused Hill's injury. *Celotex*, 477 U.S. at 324 (holding that a non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists.). The Court will therefore grant partial summary judgment on the issue of causation as well.

## ORDER

In accordance with the Memorandum Decision set out above, **IT IS ORDERED that** Plaintiff's Motion for Partial Summary Judgment *on Negligence and Proximate Cause* (Dkt. 32) is **GRANTED**.

MEMORANDUM DECISION AND ORDER - 8



DATED: June 21, 2013

B. Lynn Winmill
Chief Judge
United States District Court